HECTOR C. TOUPIN *vs.* W. SCOTT PEABODY.

Essex.   November 7, 1894. — January 1, 1895.

Present: FIELD, C. J., ALLEN, KNOWLTON, & BARKER, JJ.

*Landlord and Tenant — Lease — Statute — Notice to Purchaser.*

A lease of premises for the term of five years, containing a provision that the "lessee is to have the privilege of renewing this lease upon the same terms for the further term of five years," is "a lease for more than seven years from the

making thereof," within the meaning of Pub. Sts. c. 120, § 4, which, if not recorded as therein required, will, so far as it purports to give the lessee the right to a second term of five years, be invalid as against a purchaser of the premises without actual notice of the lease.

A lease of premises for the term of five years contained a provision that the lessee was to have the privilege of renewing the lease upon the same terms for the further term of five years. Before the first term expired the lessor conveyed the premises to a third person. The purchaser knew that the lessee was in possession of the premises as a tenant, but he was informed by the lessor, and believed, that the lessee had no written lease, and it was not until two months after the purchase that he first learned that the lessee had a written lease and was informed of its terms. *Held*, upon a bill in equity by the lessee against the purchaser for specific performance of the covenant for renewal in the lease, that the purchaser was not chargeable with actual notice of the lease.

BILL IN EQUITY, filed in the Superior Court on September 5, 1893, for specific performance of a covenant for renewal contained in a lease of certain premises in Haverhill. The case was submitted upon agreed facts, in substance as follows.

Hannah Driscoll, being the owner in fee of certain land in Haverhill, upon which was a building, the lower story of which was used for shops and the upper stories for dwelling purposes, and occupied by several different tenants, executed and delivered, on August 20, 1888, a lease of the lower story thereof to the plaintiff, containing, after the habendum, (which was for the term of five years from September 1, 1888,) the following clause: " And said lessee is to have the privilege of renewing this lease upon the same terms for the further term of five years."

The plaintiff entered under his lease, and continued to occupy the demised premises down to the filing of this bill, paying Driscoll the rent reserved in the lease as long as she continued to be the owner of the reversion. The land, with the building thereon, was conveyed by Driscoll to the defendant and William H. Floyd, by deed dated December 9, 1891, for a valuable consideration. The deed was duly recorded, and contained full covenants against all encumbrances, except certain mortgages not material to be stated. At the times of the negotiation for the purchase and of the conveyance to them, the defendant and Floyd knew that the plaintiff was in possession of the demised premises, and was occupying them as a tenant of Driscoll for the purposes of a drug store, but they were informed by Driscoll, and believed, that the plaintiff and the other tenants had no

written leases. The plaintiff did not inform the defendant or Floyd of his lease, and neither the defendant nor Floyd made any inquiry of the plaintiff as to the terms of his tenancy. Before the conveyance was made, the defendant procured a search of the title to be made by a competent conveyancer, who pronounced the title to be good.

Two months after the conveyance by Driscoll to them, the defendant and Floyd learned for the first time that the plaintiff had a written lease of the premises occupied by him, and were informed of the terms thereof. The plaintiff continued until the expiration of the lease to pay to the defendant and Floyd the amount of rent reserved in the lease at the times therein appointed for its payment, claiming to pay the same under and by virtue of the terms of the lease. The defendant and Floyd accepted the amount of the rent paid by the plaintiff, protesting, however, that it was not received under the provisions of the lease, and that by receiving the same they did not intend in any way to confirm or recognize the lease. It is admitted that they have not ratified the lease, nor admitted it to be valid against them.

Prior to the bringing of this bill, Floyd conveyed to the defendant his interest in the property so conveyed to them by Driscoll, and the defendant is now the sole owner of the fee. The plaintiff duly gave written notice to the defendant of his intention to avail himself of the privilege of renewal contained in the lease, and demanded a lease for the additional term of five years. The defendant has refused to renew the lease, has given the plaintiff notice to quit the premises, and has begun proceedings at law to recover the premises and to eject the plaintiff therefrom.

The plaintiff, upon a complaint charging him with maintaining a nuisance by using the premises demised in the lease for the illegal sale and keeping of intoxicating liquor, between April 17, 1890, and June 1, 1890, was duly found guilty and sentenced at the October term, 1890, of the Superior Court. Driscoll, after judgment upon the complaint, continued to receive the rent from the plaintiff at the times appointed in the lease for its payment, and never took any proceedings to avoid the lease. Neither the defendant nor Floyd has taken any proceedings to avoid the

lease by reason of such conviction, except by an allegation in respect thereto in the answer in this cause.

The lease was never recorded in the registry of deeds.

The case was reserved by *Dunbar*, J., upon the pleadings and agreed facts, for the consideration of this court.

*W. H. Moody*, for the plaintiff.

*B. B. Jones*, for the defendant.

BARKER, J.   Assuming that the instrument of August 20, 1888, is not a demise for two successive terms of five years each, we are nevertheless of the opinion that it is " a lease for more than seven years from the making thereof," within the meaning of Pub. Sts. c. 120, § 4, which enacts that " A conveyance of an estate in fee simple, fee tail, or for life, or a lease for more than seven years from the making thereof, shall not be valid as against any person other than the grantor or lessor and his heirs and devisees, and persons having actual notice of it, unless it is recorded in the registry of deeds for the county or district in which the real estate to which it relates is situated."   The statute is part of our system of registration of titles to land, and the general purpose for which it was established was to enable a purchaser of land to rely upon the information furnished him by the registry of deeds, if he has no actual notice of some different state of facts as to the title.   See *Dole* v. *Thurlow*, 12 Met. 157; *Earle* v. *Fiske*, 103 Mass. 491.

The intention of the particular clause in question is that a *bona fide* purchaser without actual notice may rely with certainty upon the fact that no instrument which does not appear of record, and of which he does not have actual notice, can give a tenant for years the right to any longer term than for seven years from the making of the instrument.   The statute is a remedial one, and upon the principles of construction applicable to such statutes its general intention and purpose are to be given due effect, and cases which are clearly within its general intention are to be governed by it.   See *M'Mechan* v. *Griffing*, 3 Pick. 149; *Woodbury* v. *Freeland*, 16 Gray, 105; *Brown* v. *Pendergast*, 7 Allen, 427; *Johnson* v. *Gibbs*, 140 Mass. 186; *Atcheson* v. *Everitt*, Cowp. 382; *Winchester's case*, 3 Co. Rep. 1, 4.

The general intention of the section in which the clause is found is, that no instrument operating to create an interest in

land greater than an estate for seven years shall, unless duly recorded, be valid as against any person other than the one who makes it or his heirs or devisees, unless such person has actual notice of the instrument. In expressing this intention, conveyances in fee simple, fee tail, and for life are first specified, and the enumeration closes with the words, " or a lease for more than seven years from the making thereof." In respect of estates for years, the term during which the land which a purchaser had bought could be kept from his possession by the holder of an unrecorded lease was the important matter to be fixed by the statute, as by his conveyance the purchaser acquired the right to rent and the other rights of the lessor. In fixing upon seven years from the making of the lease as the length of a term which might be valid as against a *bona fide* purchaser without actual notice, the Legislature intended that to be the utmost which a lessee for years under an unrecorded instrument could claim as against such a purchaser, whether the instrument demised directly a longer term, or provided for its indirect creation by an agreement for renewal at the lessee's option. A lease for five years, with the right to have a renewal for five more, is as much within the mischief which the statute seeks to remedy as a lease for a term of ten years, and the reasons for requiring the latter to be recorded apply equally to the other, so far as the renewal term is concerned.

We do not decide whether an instrument which makes a present demise for a term of seven years or less, and which provides for a further term which with the present demise will exceed seven years from the making of the instrument, either by way of a new lease to be made by the lessor or by the effect of the lessee's mere continuance in possession after the expiration of the first term, if not recorded, is wholly void as to a *bona fide* purchaser without actual notice, or whether it may be good for the first term of seven years or less.

It is enough for the purposes of this case to hold that as to any extension, or second term, or agreement for renewal, which will carry the possession of the lessee to more than seven years from the making of the instrument, every instrument which confers an estate for years is within the meaning of the statute. The instrument on which the plaintiff relies was of this nature,

and so far as it purported to give him the right to a second term of five years it was invalid as against a purchaser without actual notice.

The plaintiff contends that it may well be claimed that the defendant had actual notice of the lease. But while it appears from the agreed facts that the defendant knew that the plaintiff was in possession of the drug store as a tenant, it also appears that the defendant was informed and believed that the plaintiff had no written lease, and that it was not until two months after the purchase that the defendant first learned that the plaintiff had a written lease, and was informed of its terms. It is well settled that facts sufficient to put a purchaser upon inquiry are not sufficient to affect him with actual notice of an unrecorded instrument within the meaning of the language of the statute. *Pomroy* v. *Stevens*, 11 Met. 244. *Parker* v. *Osgood*, 3 Allen, 487. *Lamb* v. *Pierce*, 113 Mass. 72. *Keith* v. *Wheeler*, 159 Mass. 161. Upon this branch of the case the only legitimate inference from the agreed facts is that the defendant did not have actual notice of the lease.

Nor can the plaintiff rely upon the case of *Cunningham* v. *Pattee*, 99 Mass. 248, in which it was held that, in equity, one who purchases an estate knowing it to be in possession of a tenant is bound to inquire into the nature of the tenant's interest, and is affected with notice of its extent, and, if the tenant has a written lease, with notice of that fact and of the contents of the lease, including a covenant to renew. The clear distinction between that case and the present is, that in *Cunningham* v. *Pattee* the original term and the extension were together for less than seven years, and the statute now under consideration had no application. As the statute applies here, we must give it the same force in equity as at law, with the result that, as the defendant had no actual notice of the lease, it is not valid as against him either in equity or law.

Our view of the effect of the statute makes it unnecessary to consider the question whether the plaintiff's conviction of the offence of maintaining a common nuisance in the drug store during a portion of the first term of his tenancy ought to preclude him from maintaining a bill in equity for specific performance of the agreement for renewal.

The case was reserved upon the pleadings and the agreed facts for the consideration of this court in banc.   Let the bill be dismissed, with costs.                              *So ordered.*